IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
March 2, 2021 Session

**DONTEL MORGAN v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County
Nos. 14-03629, 14-03630, 13-05751, 13-05752, 13-05753, 14-05836, 14-05837, 14-05838 Paula L. Skahan, Judge**

———————————————————

**No. W2020-00529-CCA-R3-PC**

———————————————————

The petitioner, Dontel Morgan, appeals the denial of his post-conviction petition, arguing the post-conviction court erred in finding that he received the effective assistance of counsel prior to and during his guilty pleas and that his guilty pleas were knowingly and voluntarily entered. Upon our review of the record, the arguments of the parties, and the pertinent authorities, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and TIMOTHY L. EASTER, JJ., joined.

Lance R. Chism, Memphis, Tennessee, for the appellant, Dontel Morgan.

Herbert H. Slatery III, Attorney General and Reporter; Katherine K. Decker, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Jennifer Morris, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

***Procedural and Factual History***

*A. Guilty Plea*

As a result of a series of crimes he committed in March and June 2013 and June and July 2014, a Shelby County grand jury returned eight indictments charging the petitioner with four counts of aggravated burglary, two counts of theft of property valued over $1000, two counts of aggravated robbery, two counts of aggravated sexual battery, two counts of employing a firearm during the commission of a felony, two counts of convicted felon in

possession of a firearm, reckless endangerment, aggravated kidnapping, attempted aggravated robbery, attempted aggravated rape, aggravated assault, and three counts of failure to appear.

On December 3, 2015, the petitioner entered into a negotiated plea agreement disposing of all eight indictments. At the plea hearing, the State recited, and the petitioner stipulated to, the following facts in support of the petitioner's plea:

> Had these matters gone to trial, the State's proof would have been the following: [O]n Wednesday, April 3rd, 2013 a male broke into the bedroom at 6105 Braxton Lane, 103 while the lease holder, Dorothy [Veasy], . . . and her son, Mr. Damion Fox[x,] were inside the residence. When the suspect began to climb through the window[,] the victim shouted at the suspect and the suspect fled the scene. The police were called and were given a description of the subject.
>
> When a subject in the area of the scene matching the description observed [the] police[,] he began to run. After a brief foot chase, the [petitioner] was taken into custody and identified as somebody matching the description. They took him back to the scene and both victims did identify the [petitioner] as the person responsible for attempting to gain entry into the residence. The [petitioner] was taken down to Ridgeway Station where he did give a statement of admission to the burglary and attempt at 6105 Braxton Lane, 103.
>
> While taking his statement, MPD officers were being dispatched to another burglary at 6060 Braxton Lane, Number 104. They asked the [petitioner] about the burglary that officers were being dispatched to. He admitted to being responsible for the burglary and gave a detailed statement of admission. He then led investigating officers to 6090 Braxton Number 102 where he hid the items taken from 6060 Braxton Number 104 on the back patio underneath the barbecue grill covered with a tarp. Total value of the property taken is $1,000.
>
> There was also a residential burglary that occurred March 14th, 2013 at 6046 Summer Ridge Number 2. . . . [A] suspect matching the description of [the petitioner] who was captured on video surveillance. Investigators asked the [petitioner] about this burglary and he did give a detailed statement of admission to this burglary. Total value of the property taken there was $3,150.00.

Under . . . [i]ndictment . . . 14-03629, the State's proof would have been the following: [t]hat on June 21st, 2014 officers responded to a robbery at [the residence of L.H.[1]]. The victim indicated she was sitting in her living room when an unknown male broke the living room window and entered the residence. He was wearing a white T-shirt with a green safety vest and dark pants. The male pointed a handgun wrapped in a white towel at her and immediately took her cell phone. He then demanded that she and her mother and her four-month-old go into the back bedroom. The male held the victims at gunpoint and told them not to move. Took several items from the victim including jewelry and three cell phones. The male then began to rub the victims between their legs with his hand in a sexual manner. He then pulled up [L.H.]'s dress, put his hand in her underwear and rubbed her vagina with his fingers stating that I wanted this.

The victim began crying and praying. The man began yelling at the victim. He then left the apartment with the items. Through investigation, they did develop the [petitioner] as a suspect. His picture was placed in a photographic lineup and the victim did come down and [identify the petitioner] as the person responsible. All of those events did occur here in Shelby County.

Under indictment ending in 630, the State's proof would have been that on 6/28/2014 officers responded to an assault [on] Red Sox Lane. . . . [A.B.][2] was walking downstairs from her apartment when she was approached by an unknown male. As she reached the bottom step, the male grabbed her left wrist and began pulling her towards him. The victim screamed at the unknown male to let her go[,] but he continued pulling her and struck her several times in the face. The victim told the male that she didn't have anything[,] and he struck her in the head with a silver handgun yelling shut up. The male pushed her to the ground and began dragging her behind the apartment into a dark area. The victim continued to struggle with the male in an attempt to get away. The male hit the victim in the head with a handgun and ran away.

The victim was able to get up, ran to her car and drove to her mother's house where she called the police. When she got to her mother's house[,]

---

[1] In keeping with the policy of this Court to maintain the privacy of the victims of sexual assault, the victim will be referred to by her initials ("L.H."). No disrespect is intended.

[2] In keeping with the policy of this Court to maintain the privacy of the victims of sexual assault, the victim will be referred to by her initials ("A.B."). No disrespect is intended.

her brother returned to the scene where this happened to see if any of her stuff was laying in the grass where she said[,] and he found the cell phone. And[,] when he picked up the cell phone[,] originally he thought it was hers and took it back to her. She—when he showed her the phone, the victim said that was not her phone. And when they pulled up a picture on the home screen, it was the [petitioner] and she did identify him as the person responsible.

The [petitioner] was also developed through other means as a suspect[,] and then [the police] put [the petitioner's] picture in a photographic lineup and she also ID'd [him] again as being the person responsible for those—for that incident.

Last one, Judge, for indictments 14-05836 through 14-05838, the State's proof would have been the following:

Under [i]ndictment ending in 836, the [petitioner] did fail to appear on July 10th, 2014[,] in Criminal Court 10 for the purpose of report for the offense of aggravated burglary.

Under [i]ndictment ending in [8]37, the same thing, that he failed to appear July 10th, 2014[,] for the purpose of report on the charge of aggravated burglary.

And [i]ndictment . . . ending in 838, that he failed to report on that same day for the purpose of report on the offense of aggravated burglary under [i]ndictment 13-05751. All of these events did occur here in Shelby County, Tennessee.

After the State's recitation of the underlying facts, the petitioner was questioned by the trial court. While the petitioner had questions for the trial court during the voir dire, at the conclusion of the hearing, the petitioner stated he understood his rights, understood the terms of his plea agreement, no one was making him plead guilty, and he wanted to plead guilty. Based on its questioning of the petitioner, the trial court concluded the hearing by finding,

[Y]ou understand what you're doing. You understand the process we're going through. That you're entering your guilty pleas freely and voluntarily without threats or coercion because this is what you want to do. I'm going to rule that you've been represented by counsel under the guidelines required under the law.

- 4 -

Pursuant to the global plea agreement, the petitioner agreed to the following convictions and sentences:

| Indictment No. 13-05751 | | |
|---|---|---|
| *Count* | *Offense* | *Sentence* |
| 1 | Attempted Aggravated Burglary | 2 years at 30% |

| Indictment No. 13-05752 | | |
|---|---|---|
| *Count* | *Offense* | *Sentence* |
| 1 | Attempted Aggravated Burglary | 2 years at 30% |

| Indictment No. 13-05753 | | |
|---|---|---|
| *Count* | *Offense* | *Sentence* |
| 1 | Attempted Aggravated Burglary | 2 years at 30% |

| Indictment No. 14-03629 | | |
|---|---|---|
| *Counts* | *Offenses* | *Sentences* |
| 1 | Aggravated Robbery | 8 years at 85% |
| 2 | Aggravated Robbery | 8 years at 85% |
| 3 | Aggravated Sexual Battery | 10 years at 100% |
| 4 | Aggravated Sexual Battery | 10 years at 100% |
| 5 | Aggravated Burglary | 3 years at 30% |
| 6 | Employing a Firearm During a Felony | 10 years at 100% Consecutive to Count 5 |

| Indictment No. 14-03630 | | |
|---|---|---|
| *Counts* | *Offenses* | *Sentences* |
| 1 | Aggravated kidnapping | 8 years at 100% |
| 2 | Attempted Aggravated Robbery | 3 years at 30% |
| 3 | Attempted Aggravated Rape | 8 years at 30% |
| 4 | Aggravated Assault | 3 years at 30% |
| 5 | Employing a Firearm During a Felony | 10 years at 100% Consecutive to Count 1 |
| 6 | Convicted Felon in Possession of a Firearm | 2 years at 30 % |

| Indictment Nos. 14-05836, -05837, and -05838[3] | | |
|---|---|---|
| | *Offense* | *Sentence* |
| | Failure to Appear | 1 day, time served |

---

[3] Indictment nos. 14-05836, -05837, and -05838 each charged the petitioner with one count of failure to appear. Per the petitioner's plea agreement, he pled guilty to one count of failure to appear covering all three indictments.

After imposing partial consecutive sentences, the trial court, as a result of the petitioner's guilty plea, imposed an effective sentence of twenty years in confinement.

## B. Post-Conviction

On May 5, 2016, the petitioner filed a pro se petition for post-conviction relief. After the appointment of counsel, the petitioner filed an amended petition, arguing trial counsel was ineffective for failing to file a motion to suppress his confession, failing to file a motion to suppress the out-of-court identifications by the victims, failing to subpoena A.B.'s medical records, failing to adequately meet with the petitioner, and his plea was not knowingly, voluntarily, and intelligently entered.

A hearing was held on February 15, March 22, May 17, and August 1, 2019. At the hearing, trial counsel testified he had been licensed to practice law since 2011 and was hired to represent the petitioner in 2015. Prior to representing the petitioner, trial counsel had handled one or two jury trials. According to trial counsel, the petitioner was facing "a slew of cases," and he advised the petitioner that if convicted of most or all of the charges, the petitioner would likely die in prison.

The petitioner was in custody when trial counsel was hired to represent him. According to trial counsel, he met with the petitioner at least one time in the jail as well as during every court appearance, which trial counsel estimated to be at least ten times. During their meetings, trial counsel reviewed discovery with the petitioner, discussed the strengths and weaknesses of the State's case with him, and answered all the petitioner's questions. Though the petitioner informed trial counsel he was out of town when the crimes occurred, the petitioner failed to provide trial counsel any information such as dates, where he was, or who he might have been with. Trial counsel described the petitioner and his explanation as "ambiguous." Based on the lack of information provided by the petitioner, trial counsel did not hire an investigator because "I d[id]n't think that I received anything significant [from the petitioner] to investigate."

Trial counsel testified that he carefully reviewed the State's discovery, including the statements of L.H. and A.B. Trial counsel, however, did not interview the victims. According to trial counsel, his practice was to not interview victims because he believed doing so made him a potential witness. However, had the petitioner's case been set for trial, trial counsel would have sought funds for an investigator and would have had the investigator interview the victims.

- 6 -

Based on the numerous charges and the lengthy sentence the petitioner was facing had he gone to trial and been convicted and based on the fact the petitioner had confessed and been identified by his victims, trial counsel believed it was in his client's best interest to bundle all the charges "into one deal" in hopes of achieving a better or more favorable outcome for the petitioner.

When questioned about any specific requests the petitioner made of him, trial counsel stated that the petitioner had just three specific concerns. First, the petitioner asked trial counsel to "get time cuts" or reduce the State's plea offer. Second, the petitioner asked trial counsel to listen and review the 911 recordings. And, finally, the petitioner wanted trial counsel to verify that the cell phone found at the scene of the attack on A.B. had the petitioner's picture as the home screen on the phone. Trial counsel testified that he fulfilled each of the petitioner's requests.

Trial counsel did not see an issue with the victims' out-of-court identification of the petitioner. While acknowledging there were some minor discrepancies regarding the petitioner's height and weight and the fact that one victim was able to identify him despite having told officers that the petitioner had a cloth covering the lower half of his face, trial counsel did not find these discrepancies constituted a sufficient basis for a motion to suppress nor did he find anything suggestive about the photo array. Additionally, trial counsel recalled discussing the State's case against the petitioner with the assistant district attorney ("ADA"), including the State's plea offer, and noted that the ADA believed she had made a "generous offer" and commented that if the petitioner did not like the offer then "let's go to trial." Trial counsel interpreted these comments to mean that if the petitioner was not happy and wanted to litigate the case, such as filing a motion to suppress, the State would have rescinded its offer and set the case for trial.

Finally, trial counsel testified that the day the petitioner pled guilty was the "drop dead" date, meaning the petitioner had to either accept the State's offer or it would be rescinded and the case set for trial. Despite this deadline, the petitioner was given an extra day to talk to his family and consider the State's offer. Trial counsel testified that the petitioner's family encouraged the petitioner to plead guilty, reasoning that a twenty-year sentence was a better result than a life sentence. Trial counsel testified that he never pushes a client in one direction or the other. Rather he simply asks them what they want to do and provides them with the "pros and cons" of each alternative. Trial counsel treated the petitioner and his case the same way.

Sergeant Alisa Styles, the keeper of the records for the Shelby County jail, testified that she reviewed the jail's visitation logs for the time period of January 1, 2015 through December 31, 2015. Sergeant Styles was unable to find any record of trial counsel's visiting the petitioner during that time.

Lieutenant Reginald Titus with the Memphis Police Department testified that he was working the midnight shift in June 2014. Lt. Titus could not recall the events of June 21, 2014, even after the petitioner attempted to refresh his recollection by allowing Lt. Titus to review his supplement. Therefore, the petitioner requested and was granted permission to have Lt. Titus read his supplement into the record. According to the supplement, L.H. described the petitioner as "a black male, 5' 9" about 25 years of age, dark complexion, medium build, afro hairstyle, wearing green, construction work vest, black jeans, no gloves, brown grand-daddy hat, with some kind of dark colored cloth around his mouth area."

Memphis Police Department Officer William Forrester was assigned to the Ridgway Station in June 2014. Officer Forrester did not recall the incident or even being called to the incident. Therefore, his supplement was also read into the record. According to Officer Forrester's supplement, L.H. described the petitioner as a "male black in his twenties," "five-foot, nine inches tall with slim build," "wearing a white t-shirt with green safety vest and dark pants." L.H. also informed Officer Forrester that the petitioner had a "piece of cloth over the lower part of his face."

Detective Nicholas Dandridge with the Memphis Police Department was also assigned to Ridgeway Station in June 2014 and involved in the investigation. After the initial call, the investigation was turned over to Det. Dandridge. Det. Dandridge interviewed L.H. on June 21, 2014, at which time she confirmed her prior description of the petitioner.

At some point after the June 21 crimes, the petitioner was developed as a suspect. According to Det. Dandridge, the petitioner was "wanted for several other rapes and attempt[ed] rapes, robberies, and burglaries." Based on his investigation, Det. Dandridge created and presented L.H. with a six-person photo array. L.H. identified the petitioner as "the person who tried to rob her and tried to rape her." Det. Dandridge testified that he did not inform L.H. that they had a suspect prior to showing her the photo array. When questioned about the date and time stamp located on the photo array, Det. Dandridge testified that the array was computer generated and that the software places the date and time stamp on the array.

Det. Dandridge was also placed in charge of the investigation into the attack on A.B. on June 28, 2014. During his initial interview with A.B., she informed Det. Dandridge that her brother had retrieved a cell phone from the scene of the crime. Det. Dandridge was unaware if A.B. had looked at the phone prior to turning it over to him. On June 30, Det. Dandridge presented A.B. with a copy of the photo array that had been viewed by L.H. A.B. also identified the petitioner as "the guy who attacked me."

The petitioner was the final witness to testify at the post-conviction hearing. According to the petitioner, trial counsel never met with him in the jail and their visits during court appearances were brief, lasting only about five minutes. The petitioner admitted trial counsel provided him with two discovery packets but alleged trial counsel never reviewed the discovery with him. The petitioner also testified that trial counsel found the date on the photo array to be "fishy."

The petitioner testified he is five feet, six inches tall and has never weighed more than 150 pounds. Based on the difference between his actual size and the descriptions provided by the victims, the petitioner asked trial counsel to file a motion to suppress their statements and identifications. He also asked trial counsel to hire an investigator to interview the victims. Trial counsel told the petitioner he would not be filing any motions at that time but would look into hiring an investigator; however, trial counsel never did.

The petitioner stated that he pled guilty because trial counsel "didn't do anything and he felt he had no chance with going to trial with counsel." The petitioner testified that he did not feel like trial counsel was working on his behalf and was pushing him to plead guilty. The petitioner also stated that he pled guilty because "18 [years] sounded better than life [in prison]." According to the petitioner, he would have gone to trial if trial counsel had "shown any effort" such as filing a motion to suppress. The petitioner even claimed that he would have gone to trial even if trial counsel had lost the motion to suppress.

On cross-examination, the petitioner admitted this was not the first time he had pled guilty to a felony offense. The petitioner also admitted he had several months to consider the State's plea offer prior to entering his pleas in this matter. Finally, the petitioner conceded he informed the trial judge that he understood the terms of his plea agreement and that it was his decision to plead guilty.

During the post-conviction hearing, the post-conviction court reviewed A.B.'s medical records. According to the post-conviction court, the victim's medical records contained no exculpatory information. There was no indication of the victim's having any drugs or alcohol in her system nor did the victim provide her caretakers with a description of the petitioner. The records revealed nothing more than the victim was treated and released.

At the conclusion of the petitioner's testimony, post-conviction counsel requested additional time to try and locate the victims. According to post-conviction counsel, the petitioner's family was willing to hire an investigator to aid in finding the victims. Post-conviction counsel stated that he wanted to interview the victims and "ask them how they would have testified at the suppression hearing about the identification." Despite the

State's objection, the post-conviction court gave the petitioner thirty days to hire an investigator and locate and interview the victims.

A final hearing was held on August 1, 2019, at which time, the petitioner informed the post-conviction court that his family had not hired an investigator and he had not located the victims. After arguments by the parties, the post-conviction court took the matter under advisement.

On March 18, 2020, the post-conviction court entered a written order denying the petition. In denying the petitioner relief, the post-conviction court found 1) the "[p]etitioner has not included any specific facts in the record to support his claim that the identification procedures utilized were unduly suggestive or specific facts showing that [counsel's decision not to file a motion to suppress] . . . prejudiced the outcome of the case;" 2) the "[p]etitioner has not shown . . . that trial counsel's [investigation] was below the objective standard of reasonableness under prevailing professional norms" or that but for counsel's performance, the petitioner would not have pled guilty; 3) the medical records in question did not contain information favorable to the petitioner's defense; 4) the petitioner failed to show "a reasonable probability that the result of the proceeding would have been different if trial counsel had spent more time meeting with [the petitioner], especially in light of the overwhelming evidence against [the p]etitioner;" and 5) the petitioner failed to show "that his guilty plea[s] [were] the result of ignorance, incomprehension, or coercion." This timely appeal followed.

### *Analysis*

On appeal, the petitioner contends the trial court erred in finding he received the effective assistance of counsel. More specifically, the petitioner argues counsel was ineffective for 1) failing to file and litigate a motion to suppress the identification testimony of L.H. and A.B.; 2) failing to subpoena A.B.'s medical records; and 3) failing to adequately investigate the petitioner's case. The petitioner also alleges that the post-conviction court erred in denying the petitioner's request for funding to hire an investigator and in finding the petitioner's pleas were knowingly, voluntarily, and intelligently entered. The State submits the petitioner has failed to meet the burden required of him. Upon our thorough review of the record and the applicable law, we affirm the judgment of the post-conviction court.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. *Dellinger v. State*, 279 S.W.3d 282, 293 (Tenn. 2009) (citing U.S. Const. amend. VI; *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made

under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688-89. Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

When reviewing trial counsel's performance, this Court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689). The fact that a trial strategy or tactic failed or was detrimental to the defense does not, alone, support a claim for ineffective assistance of counsel. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is given to sound tactical decisions made after adequate preparation for the case. *Id*.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); *see Dellinger*, 279 S.W.3d at 293-94. On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. *Id*. Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. *Id*. at 457.

## A. Effective Assistance of Counsel

### 1. Motion to Suppress

- 11 -

Initially, the petitioner submits trial counsel was ineffective for failing to file and litigate a motion to suppress challenging the victims' identification of the petitioner. Specifically, the petitioner contends that the photo array was suggestive and that the victims' descriptions of the petitioner were not reliable.

In evaluating an attorney's performance, we "must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462 (citing *Strickland*, 466 U.S. at 689). In addition, we must avoid the "distorting effects of hindsight" and must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. 689-90. Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Id.* at 688-89. However, "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting *Goad*, 938 S.W.2d at 369).

During the post-conviction hearing, trial counsel testified he did not have a "good faith basis" for filing a motion to suppress the victims' identification of the petitioner. While admitting there were "minor discrepancies" between the height and weight of the petitioner as described by the victims and the petitioner's actual height and weight, trial counsel did not feel that a few inches in height or pounds in weight were significant or created a good faith basis for filing a motion to suppress. When asked about the time and date stamp on the photo array, trial counsel did not recall the petitioner's ever mentioning it to him, nor did trial counsel even remember noticing the date and time stamp.

Additionally, trial counsel testified that because the petitioner was facing an effective sentence of life in prison, they were focused on negotiating the best plea offer they could. As trial counsel negotiated a potential settlement with the State and mentioned the potential of filing a motion to suppress, the ADA informed trial counsel that she believed the State's offer was extremely generous and suggested the petitioner take the offer. Trial counsel took the ADA's comments to mean this was the State's final offer, and, if the petitioner wanted to litigate the identity issue, the offer would be rescinded and the case set for trial. Based on the petitioner's request that trial counsel "get time cut offs" and the ADA's comment about taking the offer or setting the case for trial, trial counsel believed that the filing of a motion to suppress was not in the petitioner's best interest and in conflict with the petitioner's wishes. Therefore, trial counsel made the strategic decision not to file a motion to suppress at that time and to continue to negotiate a lower sentence. Trial counsel was successful in his approach and received the final offer of 20 years.

Based on the proof presented at the post-conviction hearing, it is clear that trial counsel made a reasonable and well-informed decision not to file a motion to suppress while he was negotiating a plea offer for the petitioner, who was facing an effective life sentence, and we will not second-guess trial counsel's strategy. *See Burns*, 6 S.W.3d at 462 (citing *Strickland*, 466 U.S. at 689); *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369). Thus, as found by the post-conviction court, the petitioner failed to establish deficient performance and has not met the burden required of him. The petitioner is, therefore, not entitled to relief.

Moreover, the petitioner failed to present a ground upon which a suppression motion could have been made. In order to prove prejudice on a claim that trial counsel was ineffective in failing to pursue a motion to suppress, the petitioner must show by clear and convincing evidence that "(1) a motion to suppress would have been granted and (2) there was a reasonable probability that the proceedings would have concluded differently if counsel had performed as suggested." *Terrance Cecil v. State*, No. M2009-00671-CCA-R3-PC, 2011 WL 4012436 at *8 (Tenn. Crim. App. Sept. 12, 2011). Accordingly, "[i]t is a petitioner's burden to submit evidence (and not just his testimony surmising on the merits of a pre-trial suppression motion) that the suppression motion would have been granted and that there is a reasonable probability that the trial proceedings would have concluded differently if trial counsel had pursued a motion to suppress evidence." *Charles Bradford Stewart v. State*, No. M2015-02449-CCA-R3-PC, 2017 WL 2645651, at *14 (Tenn. Crim. App. June 20, 2017); *see Demarcus Sanders v. State*, No. W2012-01685-CCA-R3-PC, 2013 WL 6021415, at *4 (Tenn. Crim. App. Nov. 8, 2013). Here, the petitioner failed to prove by clear and convincing evidence that a suppression motion would have been granted or that there was a reasonable probability that had a suppression motion been pursued, the outcome of his case would have been different, particularly in light of the petitioner's confession to several of the crimes and the fact that his cell phone, with his picture as the home screen on the phone, was found at one of the crime scenes. Because the petitioner has failed to prove trial counsel's performance was deficient and prejudicial, he is not entitled to relief.

## 2. Medical Records

Next, the petitioner contends "trial counsel was ineffective for failing to subpoena A.B.'s medical records to the trial court so that the trial court could conduct an *in camera* inspection of the records to determine whether exculpatory information was contained in the records." However, as noted by the State, the post-conviction court reviewed the medical records and found they contained no exculpatory evidence; thus, the petitioner has failed to establish the prejudice prong of the *Strickland* standard and is not entitled to relief.

Prior to the post-conviction hearing, the petitioner subpoenaed A.B.'s medical records and had them submitted to the post-conviction court for an *in camera* review. According to his petition, the petitioner believed trial counsel should have subpoenaed the records for the trial court to review and determine if they contained any exculpatory information such as whether the victim had drugs or alcohol in her system. During the post-conviction hearing, the following exchange took place between the post-conviction court and post-conviction counsel,

> **Court:** I have reviewed [A.B.'s] medical records from Regional [O]ne. There's nothing exculpatory in here. They did blood work . . . following her complaint of being assaulted, there's no indication of any drugs in her system, or any alcohol in her system. They treated her for her injuries, and she was released. So, I don't see anything exculpatory to turn these records over. There's no indication of any substance in her – related to alcohol or drugs.

> **Counsel:** The only other thing I was arguing Your Honor, is there may have been something in there about her description of the perpetrator.
> Is there anything to that effect in there?

> **Court:** No. No, just that she was assaulted –

Based on this exchange, it is clear the petitioner was not prejudiced by trial counsel's decision not to subpoena A.B.'s medical records. The post-conviction court reviewed the records and found they contained no exculpatory evidence. The victim did not describe her attacker to the treating physicians and nurses, and there was no indication her judgment was affected by drugs or alcohol. Accordingly, nothing in the victim's medical records would have had any affect on trial counsel's trial strategy or the petitioner's decision to either plead guilty or go to trial. Thus, as found by the post-conviction court, the petitioner failed to establish prejudice and is not entitled to relief.

### 3. Investigation

Finally, the petitioner contends trial counsel was "ineffective for failing to adequately investigate the petitioner's case." More specifically, the petitioner insists trial counsel was ineffective for failing to interview L.H. and A.B. The State submits the petitioner "failed to meet both the deficiency and prejudice prongs of *Strickland*, since the petitioner did not present [L.H.] or [A.B.] at the post-conviction hearing. Upon our review of the record and applicable law, we agree with the State.

- 14 -

While, as the petitioner argues it may have been a better practice for trial counsel to interview or have the victims interviewed, we need not reach the question of deficient performance due to the fact that the petitioner's failure to call the victims during the post-conviction hearing prevent him from establishing the prejudice prong of *Strickland*. When a petitioner contends trial counsel failed to discover, interview, or present witnesses in support of his defense, the petitioner must call those witnesses to testify at an evidentiary hearing. *Black*, 794 S.W.2d at 757. This is the only way the petitioner can establish that:

> (a) a material witness existed and the witness could have been discovered but for counsel's neglect in his investigation of the case, (b) a known witness was not interviewed, (c) the failure to discover or interview a witness inured to his prejudice, or (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of petitioner.

*Id.* Even if a petitioner is able to show counsel was deficient in the investigation of the facts or the calling of a known witness, the petitioner is not entitled to post-conviction relief unless he produces a witness at his post-conviction evidentiary hearing who "could have been found by a reasonable investigation" and "would have testified favorably in support of his defense if called." *Id.* at 758.

Here, despite the petitioner's claim that it was critical to interview L.H. and A.B., he failed to present either victim as a witness during the post-conviction hearing. Therefore, the petitioner failed to establish the prejudice prong of *Strickland* and is not entitled to relief on this claim.

## B. Funds for an Investigator

Next, the petitioner claims the post-conviction court erred in denying his motion "seeking state funding for an investigator." While acknowledging that our supreme court's rules do not mandate funding in non-capital cases, the petitioner contends that the rules "violate his federal and state constitutional rights to due process." The State argues that the petitioner was not entitled to funding for an investigator. We agree with the State.

An indigent petitioner is not entitled to state funds for an investigator in a petition for post-conviction relief. According to our Tennessee Supreme Court Rules,

> [i]n the *trial and direct appeal* of all criminal cases in which the defendant is entitled to appointed counsel and in the trial and appeals of post-conviction proceedings in capital cases involving indigent petitioners, the court, in an *ex parte* hearing, may in its discretion determine that investigative or expert

- 15 -

services or other similar services are necessary to ensure that the constitutional rights of the defendant are properly protected.

Tenn. Sup. Ct. R. 13 § 5(a)(1) (emphasis added); *see* Tenn. Sup. Ct. R. 13 § 5(a)(2) (providing that "[i]n non-capital post-conviction proceedings, funding for investigative, expert, or other similar services shall not be authorized or approved"). Moreover, in *Davis v. State*, 912 S.W.2d 689, 696 (Tenn. 1995), our supreme court explained that "[a] person's right to counsel ends at the conclusion of the first stage of direct appeal" and that "[i]n the absence of a Constitutional right to counsel, there can be no Constitutional right to support services at state expense."

The petitioner contends that "[w]hen a petitioner is denied the funding he needs to get necessary witnesses subpoenaed to the courtroom and simultaneously is required to present witnesses, he is denied the opportunity to be heard in a meaningful manner" and that "by denying state funding to petitioners for needed services, [Tennessee Supreme Court Rule 13, §5(a)(2)] denies petitioners a meaningful post-conviction hearing in Tennessee." However, this Court is bound by the decisions of the Tennessee Supreme Court. *Wesley Jones v. State*, No. W2015-01481-CCA-R3-PC, 2016 WL 4357422, at *22 (Tenn. Crim. App. at Jackson, Aug. 11, 2016). Thus, while we can appreciate the petitioner's argument, we must conclude that he was not entitled to funds for an investigator and is not entitled to relief.

## C. Voluntariness of Guilty Plea

Finally, the petitioner contends the post-conviction court erred in finding the petitioner's guilty pleas were knowingly, voluntarily, and intelligently entered. The petitioner submits that his pleas were not knowingly entered because he lacked information at the time of his pleas -- whether a motion to suppress would have been successful and what might have been discovered by interviewing the victims and by subpoenaing A.B.'s medical records. He also contends that he pled guilty because he "reasonably believed he would lose at trial with an attorney who was putting no effort into his case;" and, therefore, his plea was not voluntary. Upon our review, we affirm the determination of the post-conviction court, finding the petitioner's plea was knowingly, voluntarily, and intelligently entered.

The Supreme Court has concluded that a guilty plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A trial court must examine in detail "the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969); *see Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). Appellate courts

examine the totality of circumstances when determining whether a guilty plea was voluntarily and knowingly entered. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). A guilty plea is not voluntary if it is the result of "[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats." *Boykin*, 395 U.S. at 242-43; *see Blankenship*, 858 S.W.2d at 904. A petitioner's representations and statements under oath that his guilty plea is knowing and voluntary create "a formidable barrier in any subsequent collateral proceedings [because] [s]olemn declarations . . . carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

The petitioner argues that his plea was involuntary because he did not know "whether he had a winning suppression issue" and because he did not know what an interview of the victims or a review of A.B.'s medical records would produce. Initially, we note that the petitioner has, as discussed *supra*, failed to show that the motion to suppress would have been successful. The minimal differences between the victim's description of the petitioner's height and weight versus his actual height and weight do not cast doubt on the victims' identification of the petitioner. Also, a review of the photo array reveals it was not suggestive, and the medical records contained no exculpatory evidence. Moreover, trial counsel testified that the petitioner only had three requests of him: 1) "get time cuts" or reduce the State's plea offer; 2) listen and review the 911 recordings; 3) verify that the cell phone found at the scene of the attack of A.B. had the petitioner's picture as the home screen on the phone. Trial counsel testified that he fulfilled each of the petitioner's requests. Even the petitioner testified that he knew well in advance of his guilty pleas that trial counsel was not going to file a motion to suppress and was working on reducing the amount of time the petitioner was facing.

Additionally, the record of the guilty plea hearing reflects that the trial court advised the petitioner of his rights related to a trial and of the fact that the petitioner would waive these rights if he pleaded guilty. The petitioner acknowledged that he was pleading guilty of his own accord, that trial counsel had consulted with him, that the decision to plead guilty belonged to the petitioner, and that the petitioner was not coerced into the guilty plea. The petitioner stated that he understood his guilty plea and its consequences and that he was taking his medication as prescribed. He was afforded the opportunity to ask questions and asked a question about the nature of post-conviction proceedings, which the court answered.

At the post-conviction hearing, the petitioner said that he understood the guilty plea at the time he entered it but that he felt like he had no option. However, he also testified that he pled guilty because a twenty-year sentence "sounded better" than life in prison. The post-conviction court rejected the petitioner's claim that he had no choice and found, instead, that the petitioner knowingly chose to plead guilty in order to minimize the

sentence he would have to serve. The record supports the post-conviction court's determination. The petitioner was faced with overwhelming evidence of his guilt on several charges, which carried the possibility of an effective life sentence. Trial counsel advised the petitioner of the likelihood of conviction, especially in light of his confessions and being identified by his victims, and receiving a lengthy sentence. Therefore, the petitioner elected, given the circumstances in which he found himself, to plead guilty and receive a twenty-year sentence for a handful of charges and dismissal of the additional charges rather than run the risk of going to trial and being convicted on twenty-two charges and receiving an effective life sentence.

Also, the petitioner knew well in advance of pleading guilty that trial counsel was not going to file a motion to suppress, and, despite now claiming he wanted trial counsel to do so, the petitioner told the trial court during his guilty plea that he was satisfied with trial counsel's performance. *See Blackledge v. Allison*, 431 U.S. at 74 (A petitioner's representations and statements under oath that his guilty plea is knowing and voluntary create "a formidable barrier in any subsequent collateral proceedings [because] [s]olemn declarations . . . carry a strong presumption of verity.").

Thus, the record supports the post-conviction court's determination that the petitioner's plea was knowingly, voluntarily, and intelligently entered. The petitioner, therefore, is not entitled to relief on this basis.

### *Conclusion*

Based on the foregoing, we affirm the decision of the post-conviction court.

_____
J. ROSS DYER, JUDGE